| | |
|---|---|
| KENNETH T. RUSSELL, | ) |
| | ) |
| **Plaintiff,** | ) |
| | )    **No. 17 C 1082** |
| **v.** | ) |
| | )    **Chief Judge Rubén Castillo** |
| THOMAS DART et al., | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM OPINION AND ORDER

Kenneth Russell ("Plaintiff") brings this action against Cook County ("Cook County"), Thomas Dart, Sheriff of Cook County ("Dart"), Printiss Jones, Superintendent of Division 9 at Cook County Jail ("Jones"), and several named and unknown Cook County correctional officers asserting claims under 42 U.S.C. § 1983 for the alleged deprivation of his constitutional rights and Illinois tort law. (R. 27, Second Am. Compl.) Cook County, Dart, and Jones move to dismiss several of Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6) and 735 ILL. COMP. STAT. 5/2-615. (R. 51, Mot.) For the reasons stated below, the Court grants the motion in part and denies it in part as set forth below.

## BACKGROUND[1]

Plaintiff's claims arise out of a vicious attack he endured on November 15, 2016, while jailed at Cook County Jail ("CCJ"), awaiting sentencing in a criminal case. (R. 27, Second Am. Compl. ¶¶ 1, 9, 17.) At the time, Plaintiff was assigned to a cell in Division 9, Tier 3-E at CCJ. (*Id.*) Plaintiff is not a member of a gang, but his cellmate, Carlos Rivera ("Rivera"), was a known member of the Latin Kings. (*Id.* ¶¶ 1, 18, 20, 24.) Around 10:00 p.m. that evening, Plaintiff was

---

[1] These allegations are recounted as set forth in Plaintiff's Second Amended Complaint, (R. 27).

in the shower along with other inmates, including Rivera. (*Id.* ¶¶ 21, 24.) Correctional Officer

John Doe ("Officer Doe") was guarding the inmates and, Plaintiff alleges, could see and hear all

their movements and conversations.[2] (*Id.* ¶ 22.) Another inmate gestured toward Plaintiff and

said to Rivera, "Take care of that," which Plaintiff claims is widely understood in the jail setting

to be a gang command to physically injure someone. (*Id.* ¶ 25.) Plaintiff alleges that Officer Doe

heard the command and understood it to be an immediate threat to Plaintiff's safety. (*Id.* ¶ 26.)

Plaintiff also expressly told Officer Doe that he would be in danger if he went back into his cell

with Rivera; Officer Doe responded that if Plaintiff did not return to his cell, Doe would spray

him with mace. (*Id.* ¶ 30.) Under protest, Plaintiff returned to his cell. (*Id.*)

Between 10:15-10:30 p.m., Plaintiff was standing at the door of his cell when Rivera

approached and stabbed him multiple times in the front and back using two sharp objects, one in

each hand. (*Id.* ¶ 31.) Plaintiff also received cuts to his hand and other areas of his body. (*Id.*

¶ 32.) To defend himself, Plaintiff grabbed one of the sharp objects and knocked the other out of

Rivera's hand, then knocked Rivera to the floor. (*Id.*)

Following the attack, Plaintiff lay on his bed, in severe pain and respiratory distress, and

rapidly losing blood. (*Id.* ¶ 33.) When Officer Doe came to investigate, Plaintiff told Officer Doe

that he had been stabbed and was having a seizure. (*Id.*) Officer Doe left the cell and never

returned, instead allegedly waiting for his shift to end so that he would not have to take any

action. (*Id.* ¶¶ 33, 36.) At approximately 11:00 p.m., Officer Doe's shift ended and he went off-

duty. (*Id.* ¶ 37.) At the same time, Correctional Officers D. Ortiz ("Officer D. Ortiz") and J. Ortiz

("Officer J. Ortiz") came on duty for their 11:00 p.m. shift. (*Id.* ¶¶ 14, 37.) Around this time,

other inmates began yelling for a guard to come to Plaintiff's cell. (*Id.* ¶ 38.) When no one came,

---

[2] Plaintiff alleges that he does not presently know the identity of this correctional officer, and has
identified him for the time being simply as "John Doe." (R. 27, Second Am. Compl. ¶¶ 12, 23.)

someone started a fire to get the attention of guards. (*Id.*) Eventually, Officers D. Ortiz, J. Ortiz, and Correctional Officer Sergeant T. Shults ("Officer Shults") came to investigate and observed Plaintiff lying on the bottom bunk with blood on his pants and what appeared to be stab wounds to his chest. (*Id.* ¶¶ 2, 39.) Plaintiff told them that he had been stabbed by Rivera and was having breathing problems. (*Id.*) Officer Shults ordered Officers J. Ortiz and D. Ortiz to cuff Plaintiff's hands behind his back, which made it even more difficult for him to breathe. (*Id.* ¶ 41.) They then physically forced Plaintiff to stand upright, removed him from his cell, and dragged him down a flight of stairs to a day room and left him there. (*Id.* ¶ 43.) Plaintiff alleges that he waited in the day room for an unreasonably long time before receiving medical attention, needlessly pronging his suffering and aggravating his serious injuries. (*Id.* ¶¶ 43-44.) Eventually, Plaintiff was transported to Mount Sinai Hospital, where he began receiving medical attention shortly after 1:00 a.m. the following morning. (*Id.* ¶ 46.)

Plaintiff was diagnosed in the emergency room with wounds to the "anterior chest and right scapula" (shoulder blade) and a collapsed right lung. (*Id.* ¶ 47.) He had also lost a significant amount of blood. (*Id.*) He was intubated and, at approximately 2:30 a.m., underwent surgery. (*Id.* ¶¶ 47-48.) Plaintiff remained hospitalized for approximately six days and was discharged on November 21, 2016. (*Id.* ¶ 48.)

Rivera was subsequently charged in state court with aggravated battery for attacking Plaintiff. (*Id.* ¶ 50.) However, at the same time, disciplinary charges were filed against Plaintiff, accusing him of fighting and committing arson. (*Id.* ¶ 51.) Plaintiff was ultimately found not guilty of these alleged disciplinary infractions because there was not "enough evidence to find [him] guilty." (*Id.*)

As a result of the attack, Plaintiff suffered serious stab wounds, multiple cuts and bruises, a collapsed left lung, loss of blood, and a continuing loss of normal lung function. (*Id.* ¶ 52.) Plaintiff also suffered needlessly prolonged pain, respiratory distress, and loss of blood while awaiting medical attention. (*Id.*) Plaintiff continues to receive medical care for his compromised lung, and alleges that he is forced to breathe heavily through his mouth because it is difficult for him to get sufficient oxygen by breathing normally through his nose. (*Id.* ¶ 53.) He also cannot exercise like he used to, has gained unwanted weight as a result, and has difficulty doing his daily work in the prison kitchen due to shortness of breath.[3] (*Id.*) Plaintiff also alleges that he suffered, and continues to suffer, emotionally due to the attack and due to being left helpless, wounded, and in pain for an unnecessarily long time. (*Id.* ¶ 54.) Among other emotional traumas, he suffers increased anxiety from being confined to a cell with a cellmate and distrusts any cellmate out of fear for his own physical safety. (*Id.*)

In his Second Amended Complaint, Plaintiff asserts several constitutional and state-law claims arising out of the attack. In Count I, Plaintiff asserts a claim against Cook County and Dart, in his official capacity, under the Eighth and Fourteenth Amendments and *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), alleging that they failed to create or implement constitutionally adequate policies and procedures to protect inmates from harm, ensure that injured inmates receive prompt and adequate emergency medical care, and provide meaningful grievance procedures. (*Id.* ¶¶ 72-86.) Plaintiff alleges that the constitutionally inadequate policies and procedures at CCJ were enacted and/or approved by Cook County and Dart, or were so persistent and widespread that they constitute standard

---

[3] Since the incident, Plaintiff has been transferred to Western Illinois Correctional Center, where he is presently incarcerated. (R. 27, Second Am. Compl. ¶ 9.)

operating procedures at CCJ and were the moving force behind the constitutional violations that resulted in his injuries. (*Id.* ¶¶ 79-80.)

In Count II, Plaintiff asserts a claim against Dart and Jones in their individual capacities under the Eighth and Fourteenth Amendments for failure to implement constitutionally adequate policies and procedures. (*Id.* ¶¶ 87-96.) Plaintiff alleges that Dart and Jones were responsible for creating and implementing policies to ensure that conditions at CCJ meet minimal constitutional standards for protecting inmates and for ensuring that critically injured inmates receive emergency medical care. (*Id.* ¶¶ 89-90.) Plaintiff alleges that Dart and Jones personally devised, or failed to correct, policies that were deliberately indifferent to inmate safety and the needs of critically injured inmates. (*Id.* ¶¶ 92-94.)

In Counts III and IV, Plaintiff asserts claims against Officers Doe, Shults, D. Ortiz, and J. Ortiz for deliberate indifference under the Eighth Amendment. (*Id.* ¶¶ 97-111.) Plaintiff claims that Officer Doe, by failing to protect Plaintiff before the attack despite understanding the threat to his safety and by failing to promptly call for medical attention after finding Plaintiff injured, acted with deliberate indifference to a substantial risk of harm to Plaintiff. (*Id.* ¶¶ 99-103.) Plaintiff claims that Officers Shults, D. Ortiz, and J. Ortiz also acted with deliberate indifference when, despite his serious injuries, they cuffed Plaintiff's hands behind his back, physically forced him to stand, dragged him out of his cell and down a flight of stairs, and left him in the day room for an unreasonable period of time. (*Id.* ¶¶ 108-109.)

In Count V, Plaintiff asserts a tort claim against Officer Doe under Illinois law for negligent failure to prevent aggravated battery to Plaintiff. (*Id.* ¶¶ 112-19.) Plaintiff alleges that Officer Doe was aware before the attack that Plaintiff feared imminent bodily harm from Rivera and, as an employee and correctional officer at CCJ, had a duty and ability to protect him. (*Id.*

¶¶ 113-17.) Plaintiff claims that Officer Doe breached his duty by failing to protect him from the attack by Rivera. (*Id.* ¶ 118.)

In Count VI, Plaintiff asserts a tort claim against Officer Shults under Illinois law for negligent supervision of Officers D. Ortiz and J. Ortiz. (*Id.* ¶¶ 120-25.) Plaintiff alleges that Officer Shults had a duty to protect him, which included properly supervising Officers D. Ortiz and J. Ortiz in their handling of Plaintiff following the attack. (*Id.* ¶¶ 121-22.) Plaintiff alleges that Officer Shults failed to properly supervise Officers D. Ortiz and J. Ortiz by allowing— indeed, ordering—them to cuff Plaintiff's hands behind his back, force him to stand upright, drag him from his cell and down a flight of stairs, and leave him in the day room for an unreasonable period of time. (*Id.* ¶¶ 123-24.)

In Count VII, Plaintiff asserts a tort claim against Cook County and Dart under Illinois law for negligent failure to preserve material evidence. (*Id.* ¶¶ 126-37.) Plaintiff alleges that on November 15, 2016, or shortly thereafter, both Cook County and Dart knew that Plaintiff had been attacked and had to be taken to a hospital for medical care. (*Id.* ¶ 128.) Plaintiff alleges that, as a result, they knew that records relating to the attack, including personnel records of on-duty correctional officers, were material evidence for a potential inmate grievance or lawsuit and had a duty to preserve such records. (*Id.* ¶¶ 127, 129, 134.) In addition, Plaintiff alleges that he expressly put Cook County and Dart on notice of a potential civil suit when he filed a grievance in which he specifically requested that CCJ "save video tapes [related to the attack] for my lawyer." (*Id.* ¶ 130.) Plaintiff also alleges that Cook County and Dart are obligated by statute to maintain and preserve employment records for CCJ employees. (*Id.* ¶ 134.) Plaintiff alleges that CCJ maintains a record called the "Employee Roster" that identifies the guards on duty for each shift and would disclose the identity of Officer Doe, which Plaintiff does not presently know. (*Id.*

¶¶ 23, 135.) In response to Plaintiff's requests to produce the Employee Roster for November 15, 2016, the Cook County Assistant State's Attorney informed him that Cook County did have records that would show which guards were on duty in his cell block on November 15, 2016, but that "the County can't find them." (*Id.* ¶ 135.) The Assistant State's Attorney further informed Plaintiff that the Employee Roster for November 15 had been "misplaced." (*Id.* ¶ 136.) Defendants have produced an employment record known as an "Attendance Sheet," but it does not show the identity of the guards on duty in Tier 3-E that night. (*Id.* ¶ 135.) Plaintiff claims that by not preserving the Employee Roster or other records showing which guards were on duty the night of the attack, Cook County and Dart negligently breached their duty to preserve material evidence relating to Plaintiff's claims and have prevented him from identifying and obtaining a judgment against Officer Doe. (*Id.* ¶¶ 136-37.)

## PROCEDURAL HISTORY

On February 17, 2017, Plaintiff filed his initial *pro se* complaint, naming Dart, Jones, and CCJ Correctional Officer Sergeant Yau ("Yau") as defendants. (R. 8, Compl.) Following the appointment of counsel to represent him, Plaintiff filed an Amended Complaint on June 12, 2017, adding five "John Doe" correctional officers as defendants and removing Yau. (R. 23, Am. Compl.) On July 20, 2017, Plaintiff filed his operative Second Amended Complaint, which names Cook County, Dart, Jones, and Officers Shults, J. Ortiz, D. Ortiz, and Doe as defendants. (R. 27, Second Am. Compl.) On August 28, 2017, in view of the late U.S. District Judge Milton Shadur's retirement, the case was reassigned to this Court. (R. 28, Exec. Comm. Order.)

On November 1, 2017, Cook County, Dart, and Jones ("Defendants") filed a motion to dismiss Counts I, II, and VII pursuant to Rule 12(b)(6) for failure to state a claim. (R. 51, Mot.; R. 52, Mem.) Defendants contend that Count I fails to state a viable Section 1983 claim against

Cook County or Dart under *Monell*.[4] (R. 52, Mem. at 3-6.) Defendants argue that Plaintiff has

not plausibly alleged any official policy or governmental custom behind his constitutional

deprivation, as is necessary to state a *Monell* claim. (*Id.*)

Defendants next contend that Count II fails to state a viable Section 1983 claim against

Dart and Jones in their individual capacities. (*Id.* at 6-8.) They argue that Plaintiff has not alleged

personal involvement by either Dart or Jones in any constitutional deprivations, which is

necessary for individual liability under Section 1983. (*Id.*) At most, Defendants argue, Count II

merely attempts to impose *respondeat superior* liability on Dart and Jones for constitutional

deprivations allegedly committed by their subordinates. (*Id.*)

Last, Defendants contend that Count VII fails to state a viable claim for negligent failure

to preserve material evidence. (*Id.* at 8-9.) Defendants argue that Plaintiff has failed to properly

plead that Defendants owed a duty to Plaintiff to preserve the Employee Roster, because the only

allegations of a duty are conclusory and not supported by specific facts, as required under Illinois

pleading standards. (*Id.* at 8.) Defendants specifically deny that Plaintiff's grievance, in which he

requested that jail staff "save video tapes" of the attack for his lawyer, (R. 27, Second Am.

Compl. ¶ 130), suffices to create a duty to preserve the Employment Roster. (R. 52, Mem. at 9.)

Defendants also argue that Plaintiff has not properly alleged proximate causation of any injury,

because "there is nothing pled to indicate the Employee Roster would have provided any

additional or different information" from the Attendance Sheet that was already produced to

Plaintiff. (*Id.*)

---

[4] Defendants also contend that Plaintiff has failed to state a *Monell* claim against Jones. (R. 52, Mem.
at 5.) However, the complaint does not name Jones as a defendant as to Count I—Plaintiff's *Monell*
claim, (R. 27, Second Am. Compl. ¶ 72), and Plaintiff has not argued in response to Defendants' motion
that he has stated a *Monell* claim against Jones, (*see* R. 57, Resp. at 4).

## LEGAL STANDARDS

A complaint must set forth a "short and plain statement of the claim showing that the

pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "A motion to dismiss pursuant to Rule

12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon

which relief may be granted." *Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 825 (7th Cir. 2015)

(citation and internal alteration omitted). To survive such a motion, a complaint must "contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Id.* "Determining whether a complaint states a plausible claim for relief will . . . be a

context-specific task that requires the reviewing court to draw on its judicial experience and

common sense." *Id.* at 679. In deciding a motion to dismiss under Rule 12(b)(6), the Court must

accept the factual allegations in the complaint as true and draw all reasonable inferences in favor

of the plaintiff. *Kubiak v. City of Chicago*, 810 F.3d 476, 480-81 (7th Cir. 2016).

## ANALYSIS

### I.    *Monell* Claims Against Cook County and Dart in His Official Capacity (Count I)

"Under Section 1983, there are two ways in which a party may sue an individual

government actor: in the actor's official capacity or in his individual, or personal, capacity." *Foy

v. City of Chicago*, No. 15 C 3720, 2016 WL 2770880, at *3 (N.D. Ill. May 12, 2016). "When a

plaintiff sues an individual officer in his official capacity, the suit is treated as if the plaintiff has

sued the municipality itself." *Id.* (citation omitted). In other words, an official-capacity suit

"generally represent[s] only another way of pleading an action against an entity of which an

officer is an agent," and "is, in all respects other than name, to be treated as a suit against the

entity." *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (citation omitted); *see also Lewis v. Clarke*, 137 S. Ct. 1285, 1291 (2017) ("In an official-capacity claim, the relief sought is only nominally against the official and in fact is against the official's office and thus the sovereign itself."). Plaintiff asserts his *Monell* claim (Count I) against both Cook County and Dart. The claim against Dart, because it is in his official capacity as Sheriff of Cook County, is in effect a claim against Cook County, which Plaintiff has already asserted. *See Kentucky*, 473 U.S. at 165-66. Accordingly, the Court will simply address whether Plaintiff has adequately stated a *Monell* claim against Cook County; the same result will apply to the *Monell* claim against Dart.

To establish municipal liability under Section 1983, "a plaintiff must show the existence of an 'official policy' or other governmental custom that not only causes but is the 'moving force' behind the deprivation of constitutional rights." *Teesdale v. City of Chicago*, 690 F.3d 829, 833 (7th Cir. 2012) (citation omitted). An official policy or custom can be established by any of the following: "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Id.* at 834 (citation omitted).

"In order to survive a motion to dismiss, a plaintiff must plead factual content that allows the court to draw the reasonable inference that the [municipality] maintained a policy, custom, or practice that caused the violation of the plaintiff's constitutional rights." *Liska v. Dart*, 60 F. Supp. 3d 889, 905 (N.D. Ill. 2014) (citation and internal quotation marks omitted). "[B]are allegations" of an unidentified policy or custom are insufficient. *Falk v. Perez*, 973 F. Supp. 2d 850, 864 (N.D. Ill. 2013). The allegations must allow a reasonable inference that "there is a true municipal policy at issue, not a random event." *Liska*, 60 F. Supp. 3d at 905 (citation omitted).

"If the same problem has arisen many times and the municipality has acquiesced in the outcome, it is possible . . . to infer that there is a policy at work." *Id.* (citation omitted). The allegations must also allow a reasonable inference that the policy, custom, or practice "not only caused the constitutional violation, but was 'the moving force' behind it." *Colbert v. City of Chicago*, 851 F.3d 649, 660 (7th Cir. 2017) (citation omitted), *cert. denied*, 138 S. Ct. 657 (2018); *see also Johnson v. Dossey*, 515 F.3d 778, 782 (7th Cir. 2008) ("[W]e have said that the complaint must allege that an official policy or custom not only caused the constitutional violation, but was the moving force behind it." (citation and internal quotation marks omitted)).

Plaintiff alleges that his constitutional deprivation was the result of "official policies [that] were either enacted and/or approved by Cook County and the Sheriff" or "practices [that] were so persistent and widespread at CCJ that they . . . constitute the standard operating procedures at CCJ." (R. 27, Second Am. Compl. ¶ 80.) However, the complaint fails to identify any express policies in force at CCJ, or any allegedly persistent and widespread practices. The only pertinent allegations supporting Plaintiff's *Monell* claim are that CCJ *lacked* policies for "separating gang members from non-gang members," (*id.* ¶ 29), and for "ensur[ing] that critically injured inmates receive urgent medical care," (*id.* ¶¶ 35, 45). Plaintiff, in other words, alleges a "gap" in policies concerning both inmate safety and medical treatment at CCJ. *See Hughes v. City of Chicago*, No. 08-CV-627, 2011 WL 5395752, at *5 (N.D. Ill. Nov. 8, 2011) ("Plaintiffs frame the issue as there being a lack of a policy regarding field test kits for narcotics; however, it is no different to say that the City has a policy regarding the recovery of suspect narcotics and that policy omits reference to field testing—in other words [that] the City's policy on the how to deal with suspect narcotics has a 'gap.'"). *Monell* claims based on an alleged gap in express policy are treated similar to those based on an allegedly widespread unconstitutional

practice—in both cases, "what is needed is evidence that there is a true municipal policy at issue, not a random event." *Estate of Sims ex rel. Sims v. Cty. of Bureau*, 506 F.3d 509, 515 (7th Cir. 2007) (citation omitted); *see also Calhoun v. Ramsey*, 408 F.3d 375, 380 (7th Cir. 2005) ("[I]t is more confusing than useful to distinguish between claims about express policies that fail to address certain issues, and claims about widespread practices that are not tethered to a particular written policy. . . . Both in the 'widespread practice' implicit policy cases and in the cases attacking gaps in express policies, what is needed is evidence that there is a true municipal policy at issue, not a random event."). Accordingly, the Court construes the complaint as alleging two widespread practices: (1) a widespread practice of failing to separating gang members from non-gang members at CCJ; and (2) a widespread practice of not ensuring that critically injured inmates receive urgent medical care at CCJ. (*See* R. 27, Second Am. Compl. ¶¶ 29, 35, 45.)

The Court concludes that Plaintiff fails to state a *Monell* claim because the complaint alleges only one occurrence of these allegedly widespread practices—Plaintiff's own experience on November 15, 2016. *See Arita v. Wexford Health Sources, Inc.*, No. 15-CV-01173, 2016 WL 6432578, at *3 (N.D. Ill. Oct. 31, 2016) (dismissing *Monell* claim where the complaint presented "no facts—outside of those related to [plaintiff's] own experience—that plausibly suggest [defendant] has maintained a widespread custom or practice of ignoring . . . inmates' medical needs"); *Karney v. City of Naperville*, No. 15 C 4608, 2015 WL 6407759, at *4 (N.D. Ill. Oct. 22, 2015) ("[C]ourts in this district generally dismiss *Monell* claims in which all of the allegations in the Complaint pertain exclusively to the plaintiff." (citation and internal alterations and quotation marks omitted)); *Harris v. Sandoval*, No. 14-CV-4271, 2015 WL 1727283, at *3 (N.D. Ill. Apr. 13, 2015) (dismissing *Monell* claim where plaintiff "d[id] not include any accompanying facts—aside from his own, single experience of alleged excessive force—in

support" of *Monell* claim, noting that plaintiff "does not allege other similar constitutional violations from which a plausible inference could be drawn that the City deliberately implemented . . . policies or customs that caused police misconduct").

In some cases, the circumstances surrounding a violation of a plaintiff's constitutional rights, by themselves, "may be enough to render the plaintiff's *Monell* claim plausible without the need to allege similar incidents or complaints." *Klingler v. City of Chicago*, No. 15-CV-1609, 2017 WL 3394722, at *2 (N.D. Ill. Aug. 8, 2017). That may be the case, for example, when the plaintiff's own experience with government actors illustrates a pattern of behavior that suggests something more than a random event. *See id.* at *3 (denying motion to dismiss *Monell* claim based on an alleged culture of permitting and condoning violations of inmate safety policies, noting that "although a conclusory allegation of such a culture might not be sufficient," the plaintiff alleged "the involvement of at least three police officers who interacted with [him] and/or the alleged assailant at separate points in time and yet all acted consistently with the alleged culture"). That may also be the case when the complained-of policy or custom is carried out in accordance with a particular document that is incorporated into the complaint. *See White v. City of Chicago*, 829 F.3d 837, 844 (7th Cir. 2016) (concluding in dicta that plaintiff's individual experience, together with "[a] standard printed form that does not require specific factual support for an application for an arrest warrant," sufficed to state a *Monell* claim alleging a widespread police practice of "request[ing] [a] judge to issue a warrant on the basis of [an officer's] conclusory allegation that other law enforcement officers claimed or believed plaintiff had committed an offense"), *cert. denied*, 137 S. Ct. 526 (2016). Plaintiff's allegations here, however, describe only a single manifestation of each alleged practice. This is insufficient to permit a reasonable, non-speculative inference that they are so widespread, permanent, and well-

settled that they constitute de facto municipal policy, rather than a random event. *Falk*, 973 F. Supp. 2d at 864 ("The single incident that [p]laintiff . . . alleges is not sufficient to satisfy the requirements to plead a *Monell* claim[.]"); *see also Johnson v. Frain*, No. 17 C 2000, 2018 WL 2087448, at *3 (N.D. Ill. May 4, 2018) (acknowledging *White* but noting that it rested on the plaintiff's allegations as well as "the Chicago Police Department's 'standard printed form' for warrant applications that officers generally used for all warrants—which was attached to the complaint, and, on its face, did not require officer-applicants to provide 'factual support' when making requests"); *Carmona v. City of Chicago*, No. 15-CV-00462, 2018 WL 1468995, at *2 (N.D. Ill. Mar. 26, 2018) (same); *Shields v. City of Chicago*, No. 17 C 6689, 2018 WL 1138553, at *3 (N.D. Ill. Mar. 2, 2018) (explaining that "the Seventh Circuit [in *White*] concluded that the plaintiff had sufficiently alleged a *Monell* custom or practice claim because he alleged more than his own constitutional injury based on the attached form"); *Lozanovski v. City of Crown Point*, No. 2:15-CV-454-TLS, 2017 WL 347451, at *3 (N.D. Ind. Jan. 24, 2017) (distinguishing the allegations in *White* as "includ[ing] direct evidence that would have raised the right to relief above the speculative level").

Plaintiff contends that his *Monell* claim is facially plausible because his allegations are supported by a 2008 U.S. Department of Justice report ("2008 DOJ Report") outlining constitutionally inadequate conditions at CCJ and a November 2016 report by the court-appointed Monitor in *United States v. Cook County*, No. 10-cv-2946 (N.D. Ill. filed May 13, 2010) ("2016 Monitor Report"), both of which are quoted at length in the complaint. (R. 57, Resp. at 4-6; *see also* R. 27, Second Am. Compl. ¶¶ 59, 76 (excerpting and summarizing the 2016 Monitor Report).) Specifically, the complaint quotes sections of the 2016 Monitor Report that, according to Plaintiff, "detail[] a 267% increase in similar violent incidents at CCJ since

2012 with an estimated 28% increase in 2016 alone." (R. 57, Resp. at 2.) Plaintiff argues that he has alleged not only his own personal experience with violence inflicted by a gang member, "but also that there has been a 267% increase in such incidents since 2012 and a projected 28% increase in 2016 alone." (*Id.* at 4-5.)

Plaintiff's argument is not persuasive because his characterization of the cited statistics is not accurate. Plaintiff relies on a section of the 2016 Monitor Report titled "Use of Force," which states that "CCSO [Cook County Sheriff's Office] has been transparent about the increasing reported uses of force in the [Cook County Department of Corrections]. The reported uses of force have increased -- an estimated 267% since 2012 to mid-year 2016 . . . . The projected 201[6] number is a 28% increase over CY 2015."[5] (R. 27, Second Am. Compl. ¶ 59 (emphasis omitted, alterations in original).) While Plaintiff asserts that these statistics show the prevalence of "similar violent incidents" to his own attack, (R. 57, Resp. at 2), they plainly relate to the use of force by *jail staff*—not violence between gang members and non-gang members or even inmate-on-inmate violence. Although such violence may underlie *some* of the reported uses of force, the Court cannot plausibly infer widespread violence between gang member and non-gang member inmates, or a practice of failing to separate gang members and non-gang members, based on these generalized statistics. In addition, the statistics have no bearing on Plaintiff's second alleged widespread practice—failing to provide urgent medical care to critically injured inmates.

---

[5] Plaintiff did not attach the full 2016 Monitor Report to his complaint, but Defendants attached it to their reply brief. (R. 59-1, 2016 Monitor Report.) Although the Court would be free to consider the full report because it is central to the complaint and referred to in it, *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013), the Court relied only on the portions excerpted in the complaint, which were sufficient to resolve the motion.

The complaint quotes additional passages of the 2016 Monitor Report that highlight other problems at CCJ, such as the challenge posed by "a small number of inmates who cause disorder, primarily in Division 9," (R. 27, Second Am. Compl. ¶ 60), and the "continual opportunity to create contraband/weapons" in the aging facilities of CCJ, (*id.* ¶ 58), but none of these lend plausibility to the only two widespread practices alleged by Plaintiff. For these reasons, the Court concludes that Plaintiff has failed to state a *Monell* claim against Cook County or Dart, and Count I will therefore be dismissed.

## II. Individual-Capacity Claims Against Dart and Jones (Count II)

Individual liability under Section 1983 "requires personal involvement in the alleged constitutional deprivation." *Colbert*, 851 F.3d at 657 (citation omitted); *see also Rasho v. Elyea*, 856 F.3d 469, 478 (7th Cir. 2017) ("[I]n order to hold an individual defendant liable under [Section] 1983 for a violation of an inmate's constitutional rights, the inmate must show that the defendant was personally responsible for that violation."). "While the defendant need not have participated directly in the deprivation . . . he or she must nonetheless have known about the conduct, facilitated it, approved it, condoned it, or turned a blind eye for fear of what they might see." *Rasho*, 856 F.3d at 478 (citations and internal alterations and quotation marks omitted). Thus, in order to state an individual-capacity claim against a supervisory official under Section 1983, "a plaintiff must allege that the [official] . . . directed the conduct causing the constitutional violation, or it occurred with his knowledge or consent." *Blossom v. Dart*, 64 F. Supp. 3d 1158, 1162 (N.D. Ill. 2014). Alternatively, "[a] senior jail official who was not personally involved in the acts or omissions complained of nonetheless may be liable in his individual capacity if he can be expected to have either known of or participated in creating systemic inadequate conditions at the jail." *Potts v. Moreci*, 12 F. Supp. 3d 1065, 1072 (N.D. Ill. 2013) (citation omitted); *see also Daniel v. Cook Cty.*, 833 F.3d 728, 737 (7th Cir. 2016) (noting

that individual liability may attach where a senior jail official "designed or is aware of" the jail's deliberately indifferent policy, or where the official is "aware of a systemic lapse in enforcement of a policy critical to ensuring inmate safety" but fails to enforce the policy (citation omitted)).

The Court concludes that Plaintiff has adequately stated a claim against Dart and Jones in their individual capacities. Plaintiff alleges that Dart is responsible for creating and implementing policies to ensure that conditions at CCJ meet minimum constitutional standards for protecting inmates from violence and providing urgent medical care to critically injured inmates. (R. 27, Second Am. Compl. ¶ 89.) Plaintiff alleges that Jones, in turn, is responsible for implementing policies created by Dart, including training and supervising employees in Division 9 to effectuate these policies. (*Id.* ¶ 90.) Plaintiff alleges that Dart and Jones personally devised, or failed to correct, deliberately indifferent policies for protecting inmates from violence and providing emergency medical care. (*Id.* ¶¶ 92, 94.) Plaintiff alleges that the policies were deliberately indifferent in numerous ways, including that they failed to: limit inmate access to weapons and other dangerous contraband; separate non-gang-member inmates from gang-member inmates; protect inmates from immediate threats of harm by other inmates; and ensure that critically injured inmates receives emergency medical care. (*Id.* ¶ 93.)

Plaintiff also alleges that Dart knew that correcting these policies was necessary to avoid constitutional violations but was deliberately indifferent to correcting them. (*Id.* ¶ 81.) Plaintiff alleges in the alternative that Dart failed to adequately train CCJ employees, including Officers Doe, Shults, D. Ortiz, and J. Ortiz, in compliance with policies for protecting inmates from threats of physical harm and providing emergency medical care for critically injured inmates. (*Id.* ¶ 82.) Plaintiff further alleges that Dart knew additional training was needed in order to avoid likely violations of inmates' constitutional rights, or it was obvious that additional training

was needed. (*Id.* ¶ 83.) Plaintiff alleges that either the policies themselves or the failure to adequately train CCJ employees caused the violation of his constitutional rights. (*Id.* ¶ 84.)

Contrary to Defendants' argument, these allegations plausibly allege direct liability for Dart and Jones. Taken as true, Plaintiff's allegations that Dart and Jones devised, or knew of and failed to correct, the allegedly deliberately indifferently policies concerning protecting inmates from violence and providing emergency medical care are sufficient to state an individual-capacity claim against them. *See Blossom*, 64 F. Supp. 3d at 1162 (holding that "[plaintiff's] allegations that Dart knew the policy . . . was faulty but failed to correct it are sufficient to state a [S]ection 1983 claim against Dart in his individual capacity"); *Liska*, 60 F. Supp. 3d at 901-902 (finding that plaintiff stated individual-capacity claim against Dart with allegations that he was responsible for implementing pre-trial home-monitoring system, which was used on plaintiff, and knew or should have known that it frequently malfunctioned and incorrectly reported home confinement violations, leading to plaintiff's pre-trial incarceration); *Terry v. Cook Cty. Dep't of Corr.*, No. 09-CV-3093, 2010 WL 331720, at *3 (N.D. Ill. Jan. 22, 2010) (concluding that plaintiff stated individual-capacity claim against Dart based on "his alleged failure to train and to implement policies designed to provide constitutionally adequate healthcare to pretrial detainees in the Cook County Jail"). For these reasons, the Court concludes that Plaintiff has adequately stated claims against Dart and Jones in their individual capacities.

## III.   Negligent Failure to Preserve Material Evidence (Count VII)

There is no distinct cause of action for negligent spoliation of evidence under Illinois law; instead, a claim for negligent spoliation "can be stated under existing negligence law." *Boyd v. Travelers Ins. Co.*, 652 N.E.2d 267, 269-70 (Ill. 1995). To prevail on such a claim, a plaintiff must ultimately prove that: "(1) the defendant owed the plaintiff a duty to preserve the evidence; (2) the defendant breached that duty by losing or destroying the evidence; (3) this loss or

destruction was the proximate cause of the plaintiff's inability to prove an underlying claim; and

(4) as a result, the plaintiff suffered actual damages." *Harris v. Wexford Health Sources, Inc.*,

No. 15-CV-10936, 2017 WL 4467480, at *7 (N.D. Ill. Oct. 6, 2017); *see also Martin v. Keeley &*

*Sons, Inc.*, 979 N.E.2d 22, 27 (Ill. 2012) (reciting same elements). "The general rule is that there

is no duty to preserve evidence; however, a duty to preserve evidence may arise through an

agreement, a contract, a statute . . . or another special circumstance," such as affirmative conduct

that voluntarily assumes such a duty. *Boyd*, 652 N.E.2d at 270-71. "In any of the foregoing

instances, a defendant owes a duty of due care to preserve evidence if a reasonable person in the

defendant's position should have foreseen that the evidence was material to a potential civil

action." *Id.* at 271.

     As an initial matter, Defendants improperly rely on 735 ILL. COMP. STAT. 5/2-615, which

governs motions to dismiss in Illinois courts, as measuring the sufficiency of Plantiff's negligent

spoliation claim. (R. 52, Mem. at 2, 9; R. 59, Reply at 9-10.) "Illinois is a fact-pleading

jurisdiction," and to survive a motion to dismiss under Section 2-615, a plaintiff "must allege

facts sufficient to state a legally cognizable cause of action," *Crampton v. Crampton*, 92 N.E.3d

469, 472 (Ill. App. Ct. 2017), including "facts that set forth the essential elements of the cause of

action," *Visvardis v. Ferleger*, 873 N.E.2d 436, 441 (Ill. App. Ct. 2007). By contrast, the Federal

Rules of Civil Procedure require only notice pleading, and it is well-settled that this more liberal

standard governs in federal court even when testing the sufficiency of state-law claims. *See*

*Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 517 (7th Cir.

2015) ("Under the modern regime of the Federal Rules, the complaint need contain only factual

allegations that give the defendant fair notice of the claim for relief and show the claim has

substantive plausibility." (citation and internal quotation marks omitted)); *Christensen v. Cty. of*

*Boone*, 483 F.3d 454, 466 (7th Cir. 2007) ("[W]hen federal courts entertain claims under state law—whether under the diversity jurisdiction of 28 U.S.C. § 1332 or, as here, the supplemental jurisdiction of 28 U.S.C. § 1367—it is not necessary to plead facts matching elements of legal theories."); *Addison Automatics, Inc. v. RTC Grp., Inc.*, No. 12 C 9869, 2013 WL 3771423, at *3 n.4 (N.D. Ill. July 16, 2013) ("Illinois's fact pleading standard imposes a heightened pleading standard that is not required by the Federal Rules' notice pleading standard.").

When considered under the correct pleading standard, Plaintiff has adequately stated a claim for negligent spoliation. Plaintiff alleges multiple plausible bases upon which the Court could reasonably infer that Cook County and Dart had a duty to preserve the Employee Roster or other records showing which guards were on duty the night of the attack. Plaintiff alleges that very soon after the attack, both Cook County and Dart knew about the attack and knew that Plaintiff had to be taken to the hospital. (R. 27, Second Am. Compl. ¶ 128.) Plaintiff further alleges that Cook County and Dart have a statutory obligation to preserve employment records such as the Employee Roster. (*Id.* ¶ 134.) Plaintiff also plausibly alleges that he specifically put Cook County and Dart on notice of a potential civil suit when he requested in a grievance that videotapes of the attack be saved for "for [his] lawyer." (*Id.* ¶ 130.) Any one of these could potentially create a duty to preserve, which is sufficient to survive Defendants' motion to dismiss. *See Perks v. Cty. of Shelby*, No. 09-3154, 2009 WL 2777882, at *7-8 (C.D. Ill. Aug. 31, 2009) (permitting negligent spoliation claim to go forward based on "conclusory assertion that [the jail] had a duty to maintain a video surveillance system and to preserve videotapes," despite absence of any allegation that plaintiff "ever made a request to obtain certain videotapes").

As for injury proximately caused by the alleged spoliation, Defendants apparently insist that Plaintiff must allege that the Employee Roster would not have been cumulative of other

discovery that Defendants have already produced, such as the Attendance Sheet. (R. 52, Mem. at 9.) The Court is not persuaded. Defendants cite no authority to suggest that Plaintiff must specifically plead the contents of the very document that Defendants have allegedly misplaced in breach of a duty to preserve, and indeed Illinois' more demanding fact-pleading rules would not require so much. *See Jackson v. Michael Reese Hosp. & Med. Ctr.*, 689 N.E.2d 205, 214 (Ill. App. Ct. 1997) (concluding that "the trial court . . . imposed too stringent a causation burden on plaintiffs when it found the complaint deficient for its failure to allege what . . . missing X rays would have shown," noting that the Illinois Supreme Court has "indicated that this is too difficult a burden for a plaintiff in a spoliation case, as it may be impossible to know exactly what the missing evidence would have shown"). In any event, Plaintiff *has* alleged non-cumulativeness—namely that the Employee Roster for November 15, 2016, would "show[] the identity of John Doe, the guard on duty in Tier 3-E of Div. 9 from 3:00 p.m. to 11:00 p.m.," (R. 27, Second Am. Compl. ¶ 131), and that "[t]he only employment record produced by [Defendants], referred to as an 'Attendance Sheet,' does not show [the] identity of the guard on duty" that night, (*id.* ¶ 135). That is sufficient to reasonably infer that Plaintiff has been proximately injured by Defendants' alleged negligent spoliation.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (R. 51) is GRANTED in part and DENIED in part. Count I, Plaintiff's *Monell* claim against Cook County and Dart, is dismissed. The motion is denied as to Count II, Plaintiff's individual-capacity claims against Dart and Jones, and Count VII, Plaintiff's negligent spoliation claim against Cook County and Dart. The parties shall appear for a status hearing on June 12, 2018, at 9:45 a.m. The parties are

DIRECTED to reevaluate their settlement positions in light of this opinion and to exhaust all

settlement possibilities.

ENTERED:

Chief Judge Rubén Castillo
United States District Court

Dated: May 25, 2018